UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| CLINTON L. JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:18-CV-174-TAV-HBG |
| TOMMY JONES and QCHC HEALTHCARE PROVIDER, | ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

Tommy Jones ("Defendant") has filed a motion for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Doc. 36]. Clinton L. Johnson ("Plaintiff") has filed a response in opposition to the motion [Doc. 38], and Defendant has filed a reply thereto [Doc. 39]. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED**, and this action should be **DISMISSED**.[1]

## I. Plaintiff's Allegations

On March 23, 2016, Plaintiff was convicted of arson and was booked into the Monroe County Jail, where he later earned trustee status and worked outside of the jail almost every day [Doc. 1 p. 1]. Approximately thirteen (13) months later—in April 2017—Plaintiff began having issues with his left leg due to a blood clot [*Id*.]. The blood clot

---

[1.] The Court notes that Defendant QCHC Healthcare Provider has not appeared in this action [Doc. 8]. Nonetheless, because Plaintiff cannot sustain a constitutional claim for the denial of medical care for the reasons set forth, *infra*, the Court finds that Defendant QCHC Healthcare Provider should likewise be dismissed.

caused a loss of muscle and numbness in his left leg, which reduced his mobility and endurance [*Id.*]. Plaintiff sent requests to the health care providers at the Monroe County Jail but never received any medical attention or professional attention other than being prescribed Ibuprofen and Plavix [*Id.*].

In July 2017, Plaintiff was given an arterial ultrasound, which resulted in him being diagnosed with Peripheral Artery Disease ("PAD") [*Id.* at 2]. Plaintiff asserts that by September 2017, he was unable to walk more than fifty (50) feet at a time due to the pain [*Id.*].

Plaintiff contends that his conditioned worsened, and that by November 2017, he could not walk on his left leg [*Id.*]. He was transported to the Athens Regional Hospital for another ultrasound, and the results were the same as his initial ultrasound [*Id.* at 3]. Plaintiff was placed on crutches and sent back to the Monroe County Jail with a referral to see a cardiovascular surgeon [*Id.* at 3–4]. A week later, however, he was transported to the Bledsoe County Correctional Complex ("BCCX") [*Id.* at 4]. During his classification process, Plaintiff's medical issues were evaluated, which resulted in his being placed in a wheelchair and approved for surgery [*Id.* at 4].

In May 2018, Plaintiff filed the instant suit against Sheriff Tommy Jones and QCHC Healthcare Provider, alleging that he would still be able to walk if Defendants had treated his condition in July 2017 when it was discovered [*Id.*].

## II. Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material

fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case),

3

must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888. Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible* in the factual context. *Matsushita,* 475 U.S. at 586. (emphasis added).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes] . . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

### III. Summary Judgment Evidence

Plaintiff was booked into the Monroe County Jail on March 23, 2016 [Doc. 36-1]. Plaintiff was seen several times for his complaints of leg pain, beginning in May 2017 [Doc. 36-2 p. 4]. Per the physician notes dated July 26, 2017, and the corresponding ultrasound report from July 14, 2017, Plaintiff had an ultrasound on his lower extremities that did not show deep vein thrombosis [*Id.*; Doc. 36-3]. Plaintiff once again had a lower

extremity ultrasound on July 27, 2017, stemming from his alleged leg pain and was found not to have any occlusive disease [Doc. 36-4].

On August 21, 2017, a physician's note indicates that Plaintiff was diagnosed with PAD and was prescribed Plavix, a blood thinner, as part of his treatment regimen [Doc. 36-2 p. 2; Doc. 36-5]. Although Plaintiff claims that he was unable to walk more than fifty (50) feet by September 2017, he continued to work up to seven (7) days a week as a trustee until October 20, 2017, when he was caught drinking alcohol on a work site and lost his trustee status [Doc. 36-8 p. 2–4]. Plaintiff again saw a doctor on November 8, 2017, where he complained of ongoing issues with his legs, and it was noted that Plaintiff complained of pain and was ambulating slowly at that time [Doc. 36-2 p. 2]. At that evaluation, Plaintiff was prescribed medication [*Id.*]. It was also noted Plaintiff was scheduled to be transferred to prison soon, and if that did not happen, a follow-up referral for PAD treatment would be considered [*Id.*].

Plaintiff was taken to Athens Regional Hospital for an ultrasound on November 17, 2017 [Doc. 36-2 p. 1; Doc. 36-6]. Upon Plaintiff's return from Athens Regional, a note was placed in his medical file on November 22, 2017, indicating that Plaintiff's medications were continued, and that staff were working on getting him an appointment with a vascular surgeon [Doc. 36-2 p. 1]. The note states that the jail has "given the okay to schedule further treatment" for Plaintiff [*Id.*]. Plaintiff was then transferred out of the custody of Monroe County and was sent to prison on November 27, 2017 [Doc. 36-7]. After his transfer to State custody, Plaintiff saw a vascular surgeon eight (8) months later in August of 2018 [Doc. 36-8 p. 5].

## IV. Discussion

The Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendant acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). Therefore, to establish an officer's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id*. Rather, to state a constitutional claim, such a prisoner must show that his

treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001) (quoting *Westlake*, 537 F.2d at 860 n.5); *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002).

Because of this deference to medical judgments made by trained health care personnel, it is not "unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (citation omitted).

### A. Individual Capacity

Sheriff Tommy Jones claims the defense of qualified immunity as to the claims against him in his individual capacity. Qualified immunity protects governmental employees from individual, civil liability so long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-established"; and (3) whether the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

For a right to be clearly-established, "at the time of the officer's conduct, the law [must have been] 'sufficiently clear such that 'every reasonable official would understand what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once qualified immunity has

been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (quoting *al-Kidd*, 563 U.S. at 741) (alteration in original). In short, it is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this case, Plaintiff has not alleged any facts indicating that Defendant Jones made any directive that Plaintiff should not be treated. In fact, the summary judgment evidence demonstrates that Plaintiff consistently had access to medical care throughout his incarceration, both by facility medical staff and outside medical staff [Doc. 36-2]. The Court therefore finds that Plaintiffs claim cannot survive summary judgment. Moreover, even if Plaintiff's allegations were sufficient to state a constitutional claim, Defendant Jones is protected by qualified immunity, as he was entitled to rely upon trained medical judgments that Plaintiff did not require immediate or more aggressive treatment. *See Graham ex rel. Estate of Graham*, 358 F.3d at 384.

### B. Municipal Liability

A suit against a defendant in his or her official capacity is treated as an action against the governmental entity the officer represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992). In an action against an officer acting in an official capacity, "the plaintiff seeks damages

not from the individual officer, but from the entity from which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Therefore, Plaintiff's claim against Sheriff Tommy Jones in his official capacity is the equivalent to a claim against Monroe County, Tennessee.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, to demonstrate municipal liability, a plaintiff must identify a municipal policy or custom and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted).

Plaintiff's claim against QCHC Healthcare Provider ("QCHC Healthcare"), a private corporation providing medical care to inmates at the Monroe County Jail, is assessed with the same municipal-liability standards. *See Thomas v. Coble*, 55 F. App'x 748, 748–49 (6th Cir. 2003); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1994). Accordingly, to prevail on a § 1983 claim against QCHC Healthcare, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (citation omitted).

Plaintiff has not identified any specific policy, procedure, or custom of Monroe County or QCHC Healthcare, that, when executed, deprived him of any right to medical care. Moreover, QCHC Healthcare provides medical services at the Monroe County Jail, and Plaintiff has not alleged that any Monroe County employee violated any policy or

procedure set out by QCHC Healthcare. Plaintiff's medical records demonstrate that he was promptly and consistently treated by medical providers (both inside and outside of the Monroe County Jail) each time he raised a medical complaint pertaining to his legs [*See* Doc. 36-2]. Plaintiff's protestations that additional or different treatment should have been provided is insufficient to overcome the summary judgment evidence demonstrating that Plaintiff had access to constitutionally adequate medical care while housed at the Monroe County Jail. *See, e.g.*, *Alspaugh*, 643 F.3d at 169 (noting disagreement with treatment does not raise a constitutional claim under the Eighth Amendment). Accordingly, Defendants are entitled to summary judgment.

V.  **Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [Doc. 36] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. See 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE